IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DERRICK D. KING,<br>    Petitioner, | §<br>§<br>§ | |
| v. | § | Civil Action No. 4:12-CV-262-Y |
| | § | |
| RICK THALER, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>    Respondent. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Derrick D. King, TDCJ-ID #01512863, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Livingston, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

C. Factual and Procedural History

On June 19, 2008, a jury found petitioner guilty of aggravated assault with a deadly weapon in the 371st District Court of Tarrant County, Texas, Case No. 1097019R. (Clerk's R. at 82, 84) Thereafter, on June 20, 2008, petitioner pleaded true to the habitual offender allegations in the indictment, and the trial court sentenced him to thirty years' confinement. (*Id.* at 86) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (State Habeas R. at 49-51) *King v. State*, No. 2-08-227-CR, slip op., 2009 WL 2462559 (Tex. App.–Fort Worth Aug. 13, 2009) (not designated for publication); *King v. State*, PDR No. 1595-09. Petitioner also filed two state applications for writ of habeas corpus challenging his conviction, the first of which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court and the second was dismissed as successive. (01State Habeas R. at cover. 02State Habeas R.[1]) This federal petition for writ of habeas corpus followed.

The victim, Leon MacNeal, testified at trial that he was acquainted with "D.K." from his neighborhood, which is in a high crime area, and he identified petitioner in court as the person he knew as D.K. (*Id.* at 119, 131) MacNeal testified that around midday on September 2, 2007, petitioner came to his house to "socialize." (*Id.* at 126-27) Petitioner stayed for a couple of hours and left. (*Id.* at 132) Later that night, MacNeal went to his neighbor George Bee's house across the street to use the telephone and saw petitioner at Bee's. (*Id.* at 133-34) He heard petitioner tell someone he was missing a pill bottle. (*Id.* at 135-36) MacNeil used the telephone and left.

---

[1] "01State Habeas R." refers to the state court record in petitioner's state habeas application No. WR-76,007-01; "02State Habeas R." refers to the state court record in his state habeas application No. WR-76,007-02.

Petitioner followed him outside and confronted him about the missing pill bottle. (*Id.* at 135-37) MacNeil denied knowing anything about a missing pill bottle, turned around and walked away. (*Id.* 139-40) MacNeil turned back and saw petitioner pull out a gun and shoot him in the leg. (*Id.* at 139-41) MacNeil informed law enforcement officers that a person he knew as "D.K." who lived on Spiller Avenue was the person who shot him and picked petitioner out of a photographic lineup. (RR, vol. 3, at 34, 69, 139-42, 149-51; RR, vol. 4, at 81-82) MacNeil denied using drugs on the day of the shooting but admitted to using crack cocaine the night before and to using it "off and on" on a regular basis, and the toxicology report indicated that MacNeil had cocaine and opiates in his system. (RR, vol. 3, at 123, 170-71; RR, vol. 4, at 108-10)

Joe Conner testified that he was acquainted with both petitioner and MacNeil and socialized with them on the night in question at MacNeil's house. (RR, vol. 4, at 16-17) He returned home and shortly thereafter left and went to Bee's house. As he approached Bee's house, he saw MacNeil leaving the house and walking toward his house across the street, where other individuals were drinking and smoking marihuana in the driveway, and he saw petitioner following MacNeil. (*Id.* at 19) He heard petitioner ask MacNeil where his pill bottle was and saw petitioner shoot MacNeil. (*Id.* at 20-26) Connor tied his belt around MacNeil's leg and went to get Bee. (*Id.* at 26-27) He saw an unknown individual take the gun from petitioner, petitioner go into Bee's house, exit, and change shirts before leaving the scene. (*Id.* at 28-29) He also saw MacNeil with a pill bottle after the shooting, which MacNeil discarded before the paramedics and police arrived. (*Id.* at 41) Later that night, Conner saw petitioner at Bee's house, and petitioner said that he "didn't mean to" shoot MacNeil but he had "took something from him." (*Id.* at 34) Conner admitted that on the night of the shooting he told law enforcement he knew nothing about the shooting because he did not want

to be involved but stated he later picked petitioner out of a photographic lineup as the person who shot MacNeil. (*Id.* at 36-39)

### D. ISSUES

Petitioner brings six grounds for habeas relief:

(1) He received ineffective assistance of trial counsel because counsel failed to preserve trial error for appellate review;

(2) The trial court abused its discretion by erroneously "dissuading" the defense from impeaching MacNeil with testimony that he used crack cocaine on the day in question;

(3) The trial court and his trial counsel denied him a fair trial by not providing him with a copy of the amended indictment ten days before trial;

(4) He received ineffective assistance of trial counsel because counsel failed to provide him a copy of the second re-indictment or object and request the 10-day notice to prepare a defense or consult with petitioner;

(5) He received ineffective assistance of trial counsel because counsel failed to object to the state's use of a void conviction in the sentencing enhancement paragraphs; and

(6) The trial court denied him a fair trial by allowing MacNeil to give false testimony.

(Pet. at 7-8 & Insert)

### E. RULE 5 STATEMENT

Respondent believes that petitioner's claims (3) through (6) are unexhausted, as required by 28 U.S.C. § 2254(b)(1), and that claims (1) and (2) were "reasonably denied by the state courts." (Resp't Ans. at 5)

4

F. DISCUSSION

*1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003);

5

*Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. *Exhaustion*

Petitioners seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). This requires that the state court be given a fair opportunity to pass on the claim, which in turn requires that the petitioner present his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest court in the state. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a properly filed petition for discretionary review or postconviction habeas corpus application pursuant to article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2012).

Petitioner raised ground (2) on direct appeal, but the state appellate court held petitioner had failed to preserve the issue for appellate review, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (01State Habeas R. at 49-51) Petitioner raised grounds (1) and (2) in his first state habeas application, which was denied on the merits by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (01State Habeas R. at cover, 7-8, 37-43) This was sufficient to exhaust state court remedies as to grounds (1) and (2) and was an adjudication on the merits as to those claims.

Petitioner raised grounds (3) through (6) in his second state habeas application and stated that a fellow inmate, James Smith, prepared, signed, and filed the first "false writ" without his consent. (*Id.* at 11) The state habeas judge, who also presided at petitioner's trial, found however that based on the documentary record, petitioner's allegations of a "rogue writ writer" were not credible, concluded petitioner had failed to overcome the subsequent-application bar under article 11.07, § 4, and recommended the application be dismissed as a subsequent application. (*Id.* at 107-09, 112) TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c). The Texas Court of Criminal Appeals followed the recommendation. (*Id.* at cover)

Article 11.07 of the Texas Code of Criminal Procedure prohibits a second habeas petition if the petitioner urges grounds therein that could have been, but were not, raised in his first habeas petition. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4; *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994). Petitioner raised grounds (3) through (6) for the first time in his second state habeas application, which was dismissed as abusive by the Texas Court of Criminal Appeals. The Court of Criminal Appeals applies the abuse of the writ doctrine regularly and strictly, and the doctrine is an adequate and independent state procedural bar for purposes of federal habeas review.

7

*Henderson v. Cockrell*, 333 F.3d 592, 605 (5th Cir. 2002). Federal habeas corpus relief is unavailable in the face of a state procedural default unless the petitioner can show (1) cause for the default and actual prejudice, or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, *i.e.,* that the petitioner is actually innocent of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001).

Petitioner has not given any explanation to excuse his default nor has he demonstrated that failure to consider the claims will result in a miscarriage of justice, *i.e.,* that he is innocent of the crime for which he was charged and convicted.[2] Accordingly, grounds (3) through (6) are procedurally barred from federal habeas review.

### 3. Impeachment Evidence

In ground (2), petitioner claims the trial court abused its discretion by erroneously "dissuading" the defense from impeaching MacNeil with testimony from Conner that he saw MacNeil smoking crack cocaine on the day in question. In ground (1), he claims trial counsel was ineffective by failing to preserve the issue for appellate review.

The following exchange occurred before the state called Connor to testify:

> [Defense Attorney]: One little thing to take up, Judge. Just a few moments ago, Ms. McIntire gave me some notice of potential Brady material as I'm entitled, and she's either going to file it or she's just now filed it this afternoon. But it says that on June 18th, 2008, which is today, Joe Conner, this witness, stated that back on the – September 2, 2007, he observed Darrick King selling crack cocaine at Leon MacNeil's home to Leon MacNeil and other persons and saw King and MacNeil both

---

[2]Petitioner did not reply to respondent's answer within the time allowed, and, as previously noted, his assertion that his first application was filed by a writ writer without his consent was found to be not credible by the state courts. This court must defer to the state court's factual determination of the issue, absent clear and convincing evidence in rebuttal.

8

smoking crack. Further, when the shooting occurred, there were a number of persons standing outside MacNeil's home drinking beer and smoking marijuana. Conner stated that he felt the wound from the bullet when King shot MacNeil and, after MacNeil was shot, Connor saw the pill bottle he believed to be D.K.'s and observed it to be empty.

With regard to testimony about my client selling or smoking crack, I think it's a little late in the day for 404 notices. And out of the 404 notice that was filed and served on me on May 23rd, this year, had nothing in it, but Joe Conner's name has been in the case since day one.

So while I understand the remainder of the testimony is admissible and I don't have any problem with that, as to any testimony about my client selling crack or smoking crack, I object on the basis that it's untimely. It's untimely 404 notice.

[The Court]: That objection is sustained; however, should the door be opened, I will–

[Defense Counsel]: I understand. Oh, of course.

[The Court]: – take that under advisement.

[Defense Counsel]: Of course, Judge. I understand. And I just ask the Court just to make sure that Mr. Conner understands what we're talking about because I used a lot of numbers and legal lingo, but the gravamen of my objection is that we don't go into that stuff.

[The Court]: Okay. Do you understand, sir?

[The Witness]: Yes.

[Prosecutor]: And, Your Honor, just so we're real clear on the record, what the witness has told me is that he observed them smoking crack together, Leon MacNeil and the Defendant. My understanding is we're not going into either party because one necessitates the other.

[Defense Attorney]: No, because one is Brady. Their witness lied yesterday about it apparently. My man hasn't taken the stand. He said he didn't smoke crack that day, if you recall, Judge, and I think that's certainly admissible. It impeaches his credibility, which is what this whole case hangs on.

[The Court]: Okay. So how can one be admissible without the other as far as context?

[Defense Counsel]: Did you see Leon MacNeil smoke crack that day?

9

[The Court]: I'm sorry.

[Defense Counsel]: I asked Mr. Connor, did you see Leon MacNeil –

[The Court]: Well, yeah, I do recall that. I can see how that could be impeachment, but I think that might open the door to the entire context of the transaction if there –

[Prosecutor]: And I agree, You Honor. That would be our contention.

[Defense Counsel]: Well, I – I mean, if it's one – one for all, then I guess then I'll have to accept that because I'm asking about it. So I'll accept that my client – he may testify about my client smoking crack too, but I object. I think that's incorrect. I object. Okay.

[Prosecutor]: So, Your Honor, if – I'm sorry. If defense counsel is objecting to it, then the Court has issued a ruling, and I'm perfectly prepared to abide by that.

[The Court]: Okay. I –

[Prosecutor]: If we're going into this, I assume he's withdrawing his objection.

[Defense Attorney]: Well, it's a Hobson's choice, which is no choice at all, but I'm saying without – without abandoning my objection, I've been told if one comes in, the other has to come in. Without abandoning my objection, I'm just putting everybody on notice I'm asking about it. And if it's not a good objection, I guess the Second Court will tell us, if it comes to that.

[Prosecutor]: I still think if he's got the objection, you've got a ruling on it, then that's the ruling. We'll go by it, Judge.

[The Court]: The motion – or the objection is granted. I'm going to treat it as a motion in limine for you-all to approach and me to take up the ruling at that time after I hear the evidence.

(RR, vol. 4, at 3-7)

The state appellate court held that because petitioner "did not re-urge his argument to the trial court or attempt to ask Conner the question which he now says the trial court 'dissuaded' him from asking, he did not secure an adverse ruling from the trial court," and thus forfeited the complaint.

(01State Habeas R. at 49-51) In the state habeas proceeding, the court conducted a hearing by affidavit on the issue, and counsel testified as follows:

> To answer Mr. King's specific allegation of ineffective assistance of counsel I hereby state and swear that I asked Mr. King if he wanted to address the issue of Leon McNeil's drug usage the day of the offense and he said, "No." This conversation took place just before I passed the witness Joe Nathan Conner. I told Mr. King at that time that if we went into McNeil's drug usage, his own drug use that day was likely to be admitted. He and I both agreed that because his drug use had not been placed into evidence and because McNeil had already been vigorously cross-examined about his decades of drug use, among other issues, that any benefit we got from testimony about his drug use on the day of the offense would be, at best, marginal. I believed the game was not worth the candle [sic].

(*Id.* at 35)

Based on counsel's affidavit and the documentary record, the habeas court entered the following relevant findings of fact:

*Ineffective Assistance of Counsel*

. . .

12. Hon. Leonard discussed with Applicant regarding whether to address the issue of Leon McNeil's drug usage in light of the possibility that it might open the door to extraneous offense evidence.

13. Hon. Leonard advised Applicant that the testimony would like[ly] open the door.

14. Hon. Leonard and Applicant agreed that the testimony was not worth the risk due to the fact that Leon McNeil's drug history had already been vigorously pursued during McNeil's cross-examination and the benefit of the additional testimony would be marginal.

15. Hon. Leonard's affidavit is credible and supported by the record.

16. Hon. Leonard's decision to not ask Connor about McNeil's drug use was the result of reasonable trial strategy.

*Abuse of Discretion*

17. While discussing the possibility that certain questions would open the door to extraneous offense evidence, the trial court advised that it "might."

18. Applicant then did not ask the questions that "might" open the door to the extraneous offense evidence.

19. The trial court never ruled that the questions opened the door to the extraneous offense evidence.

(*Id.* at 38-39) (record references and citations omitted)

Based on its findings, and applying the familiar *Strickland* standard to petitioner's ineffective assistance claim and relevant state law to his abuse-of-discretion claim, the state court concluded—

*Ineffective Assistance of Counsel*

3. The two-prong test enunciated in *Strickland v. Washington* applies to ineffective assistance of counsel claims in non-capital cases. To prevail on his claim of ineffective assistance of counsel, the applicant must show counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability the results of the proceedings would have been different in the absence of counsel's unprofessional errors.

4. The Court of Criminal Appeals will presume that trial counsel made all significant decisions in the exercise of reasonable professional judgment.

5. The totality of counsel's representation is viewed in determining whether counsel was ineffective.

6. Support for Applicant's claim of ineffective assistance of counsel must be firmly grounded in the record.

7. Hon. Leonard's decision to not ask Connor about McNeil's drug use was the result of reasonable trial strategy because the benefit of the testimony was marginal but the risk of extraneous offense evidence was great.

8. Applicant has failed to prove that his trial counsel's representation fell below an objective standard of reasonableness.

12

9. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

10. Applicant has failed to prove that a reasonable probability exists that the outcome of the proceeding would have been different had counsel asked Connor about McNeil's drug use.

11. Applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would be different.

12. Applicant has failed to prove that he received ineffective assistance of trial counsel.

. . .

*Abuse of Discretion*

14. Only fundamental and jurisdiction errors are cognizable on writ of habeas corpus.

15. Applicant has failed to prove that the trial court's advisory opinion that testimony "might" open up the door to extraneous offense evidence, if error, constituted a fundamental error.

16. Applicant has failed to prove that the trial court's advisory opinion that testimony "might" open up the door to extraneous offense evidence, if error, constituted a jurisdictional error.

17. Applicant has failed to prove that the trial court's advisory opinion that testimony "might" open up the door to extraneous offense evidence, if error, constituted a constitutional error.

18. Applicant has failed to prove that his claim that the trial court erred in advising that the testimony "might" open up the door is cognizable in this application for writ of habeas corpus.

(*Id.* 40-41) (citations omitted)

In turn, the Texas Court of Criminal Appeals denied relief based upon the habeas court's findings. (*Id.* at cover) This constitutes an adjudication on the merits of the claims and is entitled

13

to the presumption of correctness, absent clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). Having reviewed the record in its entirety, and deferring to the state habeas court's factual findings, the state courts' determination of the issues was neither unreasonable in light of the evidence before the state courts nor contrary to federal law on the issues.

"Due process is implicated only for rulings 'of such magnitude' or 'so egregious' that they 'render the trial fundamentally unfair.'" *Gonzalez v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011). "It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts." *Id.* "Relief will be warranted only when challenged evidence 'played a crucial, critical, and highly significant role in trial.'" *Id.* Given MacNeil's admission to using drugs on a regular basis and the toxicology report, it cannot be said that evidence that NacNeil was smoking crack cocaine on the day of the shooting, for purposes of impeachment, would have played a crucial, critical, or highly significant rule in petitioner's trial.

Further, counsel is not ineffective for following petitioner's decision not to question MacNeil on the topic. Counsel will not be deemed ineffective for following his client's wishes, so long as the client made an informed decision. *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000). A defendant may not block his lawyer's efforts and later claim the resulting performance was constitutionally deficient. *Id.*

## II. RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's petition for writ of habeas corpus be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until October 9, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until October 9, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

15

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September ___19___, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE